

**IT IS ORDERED as set forth below:**

**Date:  August 17, 2017**

_____

**W. Homer Drake**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | : | CASE NUMBER |
| | : | |
| GLENN LEE THOMPSON, | : | 11-11192-WHD |
| HEIKE BIRGIT THOMPSON, | : | |
| _____ | : | |
| | : | |
| GUY G. GEBHARDT, | : | ADVERSARY PROCEEDING |
| Acting United States Trustee, | : | NO. 15-1016-WHD |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GLENN LEE THOMPSON, | : | IN PROCEEDINGS UNDER |
| HEIKE BIRGIT THOMPSON, | : | CHAPTER 7 OF THE |
| | : | BANKRUPTCY CODE |
| Defendants. | : | |

## ORDER

After a lengthy case that proceeded through Chapters 13, 11, and 7,

Glenn Lee Thompson and Heike Birgit Thompson (hereinafter, collectively, the "Debtors") received a Chapter 7 discharge on February 26, 2014.  Just shy of a year later, Guy G. Gebhardt (hereinafter the "U.S. Trustee"),[1] Acting United States Trustee for Region 21, filed the complaint initiating the instant adversary proceeding.  In his complaint, the U.S. Trustee seeks revocation of the Debtors' discharge.

On September 12, 2016, the Debtors filed a motion for summary judgment, which this Court, on November 16, 2016, granted in part and denied in part.  The effect of the Court's order was to reduce this adversary proceeding to a single count of the U.S. Trustee's complaint that alleged that the Court should revoke the Debtors discharge pursuant to § 727(d)(2) for their failure to report the acquisition of property of the

---

[1] The Court will also use "the U.S. Trustee" to refer to representatives of the U.S. Trustee (for example, those employees of his office serving as counsel in this proceeding).

2

estate.  As this proceeding concerns the revocation of a discharge, it is a core proceeding, *see* 28 U.S.C. § 157(b)(2), over which this Court has subject matter jurisdiction, *see* 28 U.S.C. §§ 157(a), 1334.

The Court held a two-day trial on the U.S. Trustee's complaint beginning on July 12, 2017.  Having considered the parties' arguments, the testimony of witnesses, the exhibits admitted into evidence, and the Court's own records,[2] the Court finds and concludes as set forth below.

## Findings of Fact

The Debtors filed a Chapter 13 petition on April 3, 2011.  At the time the Debtors filed their petition, they held interests in two companies.  Glenn Thompson (hereinafter "Glenn") owned and operated GHT United LLC (hereinafter "GHT"), a construction company.  Heike

---

[2] *See Sciortino v. Gwinnet Cty. Dep't of Water Res. (In re Sciortino)*, 561 B.R. 260, 271 (Bankr. N.D. Ga. 2016) (Ellis-Monro, J.) ("[T]he Court can take judicial notice of its own docket….").

3

Thompson (hereinafter "Heike"), who earned degrees in economics and business in Germany and had previous business experience, owned and operated Nattco, LLC (hereinafter "Nattco").  Nattco, in turn, owned and operated a self-storage facility in Newnan, Georgia, and served as a U-Haul Agency.  This was Heike's third bankruptcy case, as she had filed two Chapter 13 petitions in the 1990s.

On September 1, 2011, at the Debtors' request, the Court converted the case to Chapter 11.  That same day, Nattco filed its own petition under Chapter 11.[3]  On July 10, 2013, the Court converted the Debtors' case to Chapter 7.  The Chapter 7 Trustee subsequently entered a report of no distribution on December 31, 2013.  On February 26, 2014, the Debtors received a discharge and the case was closed.  In Nattco's case, the Court confirmed a plan of reorganization on

---

[3] Case No. 11-12883-whd.

4

September 6, 2013, and entered a final decree on March 24, 2015. Lisa Loftin represented both the Debtors and Nattco in their cases.

On February 19, 2015, the U.S. Trustee filed a motion to reopen the Debtors' case, alleging that the Debtors had filed monthly operating reports that were "incomplete, inaccurate, or erroneous." On February 25, 2015, the U.S. Trustee filed the complaint initiating this adversary proceeding. As recounted in the introduction, the Court's order of November 16, 2016, significantly narrowed the scope of this proceeding. When it came on for trial, the sole question before the Court was whether the debtors "acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee." 11 U.S.C. § 727(d)(2).

5

Concerning that question, the evidence shows that, prior to their bankruptcy, the Debtors had used GHT's business account to pay their personal expenses. When Heike would prepare GHT's taxes, she would review GHT's bank statements and exclude those expenses from GHT's claimed deductions. While the Debtors' case was in Chapter 11, they continued to use GHT's account to pay for the following personal expenses: vacations to Hawaii, Disney World, Puerto Rico, and Destin, Florida; sporting goods; pet care; and purchases at liquor stores, restaurants, and grocery stores.

During that time, the Debtors were required to prepare and submit monthly operating reports showing their income and expenses for each month. The Debtors did not include these payments as income on those reports. The Debtors argue that they failed to do so because Ms. Loftin told them that GHT was unrelated to their bankruptcy. In that vein,

6

Heike testified that, prior to the Debtors' vacation to Hawaii, she had approached Ms. Loftin with concerns about the expense of the trip.  Ms. Loftin inquired as to whether the trip was being paid for by Nattco. Heike told her that the money was Glenn's money from GHT, to which Ms. Loftin replied that even people in bankruptcy can go on vacation.

In addition to the payment of personal expenses from GHT's bank account, the testimony and other evidence presented at trial focused on cash "hoarded" by the Debtors during their case.  That evidence shows that about a month prior to the filing of the Debtors' case, Nattco stopped depositing its cash receipts into its bank account.  Instead, the cash was kept separate and removed to the Debtors' residence, where they kept it in a gun safe that Glenn had purchased.  During the time the Debtors' case was in Chapter 11, Nattco's cash receipts totaled over $83,000—none of which was placed in Nattco's debtor-in-possession

7

bank account.

The testimony at trial showed that Glenn liked to have cash on him due to past difficulties using a bank card, and the Debtors paid one of Glenn's employees in cash to house-sit and perform renovations. The Debtors did not report any of this on their operating reports, nor did Heike report the cash receipts on Nattco's operating reports or contemplate the use of the cash in Nattco's plan of reorganization in its Chapter 11 case. Additionally, when the Debtors' case converted to Chapter 7, they did not disclose that they were in possession of any money that was not their own.

### Conclusions of Law

As stated above, the sole issue before the Court is whether the Debtors ran afoul of § 727(d)(2), which calls for revocation of a discharge if a debtor "acquired property that is property of the estate, or

8

became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee." 11 U.S.C. § 727(d)(2). The Court breaks this inquiry down into four parts: (A) Whether the Debtors acquired, or became entitled to acquire, property; (B) Whether the property was "property of the estate"; (C) Whether the Debtors failed to report the acquisition of or entitlement to that property; and (D) Whether the Debtors "knowingly and fraudulently" failed so to report. The burden is on the U.S. Trustee to prove these points in the affirmative by a preponderance of the evidence. *See Smith v. Argiannis (In re Argiannis)*, 183 B.R. 307, 310 (Bankr. M.D. Fla. 1995).

A. Whether the Debtors acquired, or became entitled to acquire, property.

There is no dispute in this proceeding that the payment of personal expenses by GHT was "property" that the debtor's acquired as income. *See generally Sly v. United States*, 318 B.R. 194, 200-01 (N.D. Fla. 2004) (affirming bankruptcy court's determination that the debtor's failure to report personal expenses paid by his non-profit as income on his tax returns was fraudulent).  There is a dispute, however, as to whether the Debtors also "acquired" the cash they removed from Nattco's business premises.

The U.S. Trustee's own analyst testified at trial that he had no knowledge of the Debtors ever using the cash for their personal purposes.  However, the evidence shows that the Debtors took over $83,000 in cash to their house and that the Debtors used cash to pay a

10

friend to renovate their house.  While the U.S. Trustee has not directed the Court to any evidence directly connecting those two facts, the large volume of cash taken to the Debtors' home, combined with the use of cash to pay for renovations, convinces the Court that, more likely than not, the Debtors used Nattco's cash to pay for the renovations. Therefore, the Debtors paid a personal expense with money from Nattco, which, like the payment of expenses by GHT, constitutes income that the Debtors acquired.

B. Whether the property was "property of the estate."

The Code defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  It also includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate" and "[a]ny interest in property that the estate acquires after the commencement of

11

the case." 11 U.S.C. § 541(a)(6), (7).  Additionally, in a Chapter 11 case

in which the debtor is an individual,

> [P]roperty of the estate includes, in addition to the property
> specified in section 541—(1) all property of the kind
> specified in section 541 that the debtor acquires after the
> commencement of the case but before the case is closed,
> dismissed, or converted to a case under [another chapter],
> whichever occurs first….

11 U.S.C. § 1115(a).  Property acquired post-petition in a Chapter 11

case remains property of the estate when the case converts to Chapter 7.

*See Rogers v. Freeman (In re Freeman)*, 527 B.R. 780, 794 (Bankr.

N.D. Ga. 2015) (Drake, J.); *see also Meier v. Katz (In re Katz)*, 550 B.R.

384, 390 (N.D. Ill. 2016); *In re Lincoln*, No. 16-12650, 2017 WL

535259, at *3 (Bankr. E.D. La. Feb. 8, 2017).

Here, the parties do not dispute that the payment of the Debtors'

personal expenses by GHT constituted property of the estate.  However,

12

the parties do disagree about the nature of the cash removed from Nattco.

The Debtors contend that, despite its removal from the premises and its placement in the Debtors' personal gun safe, the cash remained "Nattco cash" and the Debtors never obtained a direct interest in it.  If that were the case, the cash would not be property of the estate, as even a closely held company's assets are not automatically its member's assets. *See generally Dych v. VanBrocklin (In re VanBrocklin)*, 566 B.R. 90, 97 (Bankr. N.D. Ga. 2017) (Drake, J.).

Here, however, the Court has already concluded that the Debtors used some portion of the cash removed from Nattco to pay for renovations to their house.  Thus, just as the payment of personal expenses by GHT constitutes property of the estate, so also does the payment for the renovations by Nattco.  Both constitute distributions the

13

Debtors received from each respective company, and both constitute property of the estate.

C. Whether the Debtors failed to report the acquisition of or entitlement to that property.

The Debtors failed to report the payment of personal expenses by GHT and Nattco. Even though the Debtors were required to file the monthly operating reports, which required the reporting of all income, they did not report these payments nor otherwise disclose that they had received this income.

D. Whether the Debtors failed to report the acquisition of the property "knowingly and fraudulently."

The U.S. Trustee must prove that the Debtors failed to report with the intent of defrauding the estate. *See In re Argiannis*, 183 B.R. at 310. There are four ways the U.S. Trustee can prove fraud: (1) prove that the

Debtors were aware of their failure to report and knew that it would mislead the trustee; (2) establish that the Debtors pursued a fraudulent course of conduct; (3) show sufficient evidence to create an inference of fraudulent intent from all of the circumstances; or (4) show that the Debtors acted so recklessly that the Court could imply fraudulent intent. *See id.*

Because "[f]raudulent intent may be inferred from all of the facts and circumstances of a case," a court has a broad range of facts that it may consider in coming to a decision. *See Walton v. Taylor (In re Taylor)*, No. 12-6021, 2014 WL 1330561, at *6 (Bankr. S.D. Ga. Mar. 31, 2014) (alteration in original) (quoting *Walton v. Staub (In re Staub)*, 208 B.R. 602, 605 (Bankr. S.D. Ga. 1997)).  Among those facts are a debtor's business acumen, *see Shinhan Bank Am. (Inc.) v. Kim (In re Kim)*, No. 10-06500-JRS, 2011 WL 5902461, at *6 (Bankr. N.D. Ga.

15

Oct. 27, 2011) (Sacca, J.), and a debtor's conduct in other bankruptcy cases, *see Robbins v. Haynes (In re Haynes)*, 549 B.R. 677, 688 (Bankr. D.S.C. 2016); *In re Taylor*, 2014 WL 1330561, at *5-7.

Here, there is significant evidence suggesting that the Debtors knowingly and fraudulently failed to report the GHT payments and the cash. The Debtors, both of whom own their own businesses, were aware of their duty to file the monthly operating reports that require the reporting of all income and expenses. It should have been plain to both of them, particularly Heike, who is an experienced businesswoman with degrees in business and economics, that the payment of personal expenses with money from their businesses would constitute income that would need to be reported. Additionally, Heike had been in bankruptcy before. While those cases were filed many years ago, she still would have known that a debtor has to disclose her income. Despite this

16

knowledge, they did not report the income.

Furthermore, the Court takes note of the Debtors conduct concerning the Nattco cash. The Debtors were hiding that cash in an effort to defraud their creditors, as evidenced by the fact that they began taking the cash home, rather than depositing it in the bank, shortly before of the filing of their case. Furthermore, Nattco's plan of reorganization made no mention of the cash, nor was the cash ever reported in Nattco's case. From this conduct relating to Nattco, the Court can infer that the Debtors were pursuing a fraudulent course of conduct in their personal case.

Also, the sheer amount of income that was not reported suggests fraudulent intent. A person who uses a business account to buy a personal dinner now and then could honestly forget to disclose that purchase, but the amount of expenses involved here (multiple vacations

and home renovations) belies any inadvertence defense.

Finally, the Debtor's argument that they relied on the advice of counsel concerning the payment of expenses by GHT is unavailing. It is true that "reliance in fact on the advice of counsel may prevent a finding of actual knowledge of impropriety, at least 'if the advice is reasonable' and the attorney was fully-informed before giving it." *Seaver v. Markey (In re Markey)*, 378 B.R. 594, 604 (Bankr. D. Minn. 2007) (quoting *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 765 (B.A.P. 8th Cir. 2002)). However, "advice of counsel 'is not an impenetrable shield behind which [a debtor] may continually hide.'" *Cadles of Grassy Meadows II, L.L.C. v. St. Clair (In re St. Clair)*, 533 B.R. 31, 42 (Bankr. E.D.N.Y. 2015) (alteration in original) (quoting *Dubrowsky v. Estate of Arnold Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 575 (E.D.N.Y. 2000)). Reliance is unreasonable, and, thus, not a defense,

18

"when the erroneous advice should be 'transparently plain' to the debtor." *Abraham v. Stuart*, No. 15-CV-04864 (JFB), 2016 WL 4045432, at *9 (E.D.N.Y. July 28, 2016) (quoting *In re Dubrowsky*, 244 B.R. at 573). Here, the Court finds that the Debtors did not reasonably rely on the advice of counsel in failing to report the GHT payments. Indeed, the Court is not convinced that Ms. Loftin ever advised the Debtors that paying their personal expenses with money from GHT without reporting that fact was acceptable. And even if she had, such advice was patently unreasonable.

The testimony was that Ms. Loftin told the Debtors that GHT had nothing to do with their bankruptcy. This, to a point, is true. GHT, as a limited liability company, was its own entity, and it was not in bankruptcy. Its business and the payment of its employees could go on unaffected by the bankruptcy filing. The Court concludes that this is the

19

message Ms. Loftin was attempting to impart to the Debtors.  The Court does not conclude that Ms. Loftin was advising the Debtors that when it came to GHT's interactions with them (for instance, when the Debtors received money from GHT through the payment of personal expenses), those interactions would not affect their bankruptcy.

Even if Ms. Loftin's statement was meant to imply, as the Debtors appear to argue, that the Debtors could use GHT as their personal bank protected from creditors, such advice would have been unreasonable. The Debtors both own businesses, and Heike has been in bankruptcy before.  The Debtors knew that they were required to report their personal income and expenses on monthly reports, and two business owners should know that income is income regardless of its source. Indeed, they demonstrated their understanding that GHT's payment of their expenses was their own income by separating out those payments

when preparing GHT's tax returns.  If they had received the advice from Ms. Loftin that they claim, they should have known to disregard it.

Neither does the second conversation, the one in which Ms. Loftin told them they could go on vacation, indicate that Ms. Loftin told the Debtors not to report the GHT payments as income.  The Court's interpretation of the testimony is that Ms. Loftin was answering the question of whether the Debtors were allowed to go on vacation to Hawaii, not whether they needed to report how they had acquired the money to do it.  And, again, even if Ms. Loftin had advised the Debtors not to report the payment of that expense by GHT, such advice should have been patently unreasonable to the Debtors, who should have known that they had to report all of their personal income on their monthly operating reports.  At the least, the Debtors should have directly approached the U.S. Trustee to determine their obligations concerning

21

the GHT payments.  *See generally In re Markey*, 378 B.R. at 607 (concluding that knowledge of the impropriety of counsel's advice "imposed a duty on [the debtor], to make direct inquiry of the Trustee").

Given the totality of the circumstances in this case, the Court concludes that the Debtors knowingly and fraudulently failed to report the acquisition of property of the estate.

## Conclusion

In accordance with the foregoing, it is hereby **ORDERED** that the Debtors' discharge received in Case No. 11-11192-WHD is **REVOKED** pursuant to § 727(d)(2).

Judgment will be entered for the U.S. Trustee in conformity with this Order.

The Clerk is **DIRECTED** to serve this Order on the U.S. Trustee, the Debtors, their respective counsel, and all creditors and parties in

interest in Case No. 11-11192-WHD.

## END OF DOCUMENT